CASE 27—EQUITY—MAY 15, 1883.

# Taylor v. Hemingray, &c.

APPEAL FROM CAMPBELL CHANCERY COURT.

1. "The guardian having executed bond, which is approved, is hereby appointed special commissioner to receive the purchase-money from the master commissioner when collected, and reinvest the same in productive real estate," &c.

2. The bond is an undertaking to the infant that her guardian will faithfully perform his duties, reinvest the proceeds, &c., &c.

3. The guardian received the money, but failed to make the reinvestment. *Held*—It is immaterial whether the guardian received the money from the commissioner or the purchaser of the land. His surety is liable to the infant upon the bond.

J. R. HALLAM AND WM. LINDSAY FOR APPELLANT.

1. There is no suggestion nor pleading to show that Timberlake had failed to pay over the money collected by him. The practice in such cases requires it. (Jones v. Froman, 6 Mon., 129.)

2. Appellees fail to aver in any of their pleadings that any money had been collected by the master commissioner on account of Mrs. Hemingray's realty.

3. The record does not show that it was made known either to Taylor or Hemingray, and Taylor cannot be held liable for money so collected by him.

4. It is necessary to show in this action that the plaintiff has performed all the conditions precedent on his part, and that the defendant has made default. (30 Georgia, 93; Am. Lead. Cases, vol. 2, 434; Hammond v. Crawford, 9 Bush, 76.)

M. J. DUDLEY FOR APPELLEES.
    No brief.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellee, Ann S. Hemingray, a daughter of Henry C. Timberlake, obtained by devise from her uncle, John Tibbatts, some real estate, consisting partly of unimproved lots in the city of Newport. She being an infant when the devise was made, her father, Henry Timberlake, qualified as her statutory guardian, with the appellant, John Taylor, as

Taylor v. Hemingray, &c.

his surety. The estate devised was to his daughter for life, with remainder to her children.

A petition in equity was filed by her guardian for a sale of this unimproved property, and an investment of the proceeds. On the 31st of January, 1872, a judgment was entered directing a sale of the property by the court's commissioner, that judgment providing, "the guardian having executed bond, which is approved, is hereby appointed a special commissioner to receive the purchase-money from the master commissioner when collected, and reinvest the same in productive real estate, under the supervision of this court, to be held under the limitations and by the parties as directed by the testator in his will." The bond is an undertaking to the infant that her guardian "will faithfully perform all the duties as special commissioner, to reinvest the proceeds of sale, obey the orders of this court in relation thereto that have been or may be made, and account for his actions herein, dated 31st January, 1872.

(Signed)                         H. C. TIMBERLAKE,
                                 J. B. TAYLOR."

The master subsequently filed his report of sale, and on the 30th of May, 1874, this order was entered: "The purchasers are permitted to pay the purchase-money before due, and the guardian *is directed to reinvest the same and report to court.* The purchasers, Thomas Nutward and Joseph Stone, having paid the purchase-money, the master is directed to convey to them the lots purchased."

Taylor, the appellant, was surety on the original bond as guardian executed by Timberlake, and on the bond executed by Timberlake as special commissioner. At the time of the sale and execution of the bond there was no remainderman

in existence, but shortly after the marriage of the devisee she gave birth to a child, named Robert, who is before the court asserting his claim.

Taylor, the surety, apprehending some trouble by reason of his liability, filed his petition in equity, seeking to avoid responsibility by reason of certain irregularities in the proceedings, alleging that the money, or a part of it, had gone into the hands of the guardian, and asking a settlement of the guardian's accounts. Out of that action and the failure of the guardian, as special commissioner, to make the investment, originates the claim of the life tenant and her child.

They file an answer and cross-petition, alleging a sale of the property, and that the commissioner was directed to pay over the money to the special commissioner for reinvestment; that no investment had been made, or report with reference thereto; that the guardian, although ordered to do so, had failed to make any investment, or account for the moneys. They ask for a settlement, and that he account, &c., and for all relief to which they are entitled.

The defense is, that the commissioner never collected the money, but that the purchasers voluntarily paid the money to the guardian without authority, and for that reason the surety is not liable; further, that, as the guardian had no right to invest until he was ordered to collect the money, or the commissioner to pay it over to him, and no order of court having been made in reference thereto, no breach could have occurred, and none is alleged; that the guardian is liable to the purchasers, and not to these appellees, as they had no right to pay it over.

The guardian, as special commissioner, made his report, showing the balance in his hands unaccounted for, and in

June, 1879, Timberlake was, by an order of court, directed to pay the money into court on or before the next term, and if he failed, steps would be taken against the sureties. He failed to pay the money, and a judgment was then entered against Taylor, as surety, requiring him to pay the money to Hemingray, as special commissioner, and from that judgment he appeals.

The chancellor is trying to reach this money in the hands of Timberlake, whether as guardian or as special commissioner, that he may have the proceeds reinvested. Taylor, in his original action, is denying his liability on either bond, and is seeking to avoid the payment of the money upon mere technical grounds. In the cross-petition of the beneficiaries, it is alleged that both bonds were executed by Taylor as the surety, and the covenants of each set forth; and the only defense the surety presents is, that while the guardian was ordered to reinvest and the purchaser to pay the money before due, that he ought to have received it from the commissioner, whose duty it was to collect, and not from the purchaser.

The money, or the most of it, had been paid into court before the order directing the guardian to reinvest was made; and while there is no order in express terms requiring the purchasers or the commissioner to pay the money over to the guardian as special commissioner, it must necessarily follow, when he was directed by an express order to invest, that he had the right to receive the money from either the purchaser or the commissioner. By the original judgment, and under which the bond to reinvest was executed and approved, the guardian was appointed to receive

the money from the commissioner when collected, and rein-vest under the supervision of the court.

He was not then ordered to reinvest, but at a subsequent term of the court the order was entered, as already recited, permitting the purchasers to pay the money for the land before the maturity of the notes, and they did pay the money into court, or the greater portion of it, and deeds were ordered to be made them by the commissioner. Who they paid the money to does not appear; and at the same term the guardian was ordered to make the investment in this language: "The purchasers are permitted to pay the purchase-money before due, and the guardian is directed to reinvest the same and report to court."

The guardian received the money, whether from the com-missioner or the purchasers does not appear, but failed to make the investment or to account for the money. It is immaterial whether he obtained the money from the com-missioner or the purchasers; he was authorized to invest it and report to court, the order clearly implying his authority to receive the money, as he could not well invest the money when in the hands of the purchasers; yet it is maintained that, because the record fails to show that the commissioner was directed to pay it to him in express terms, the surety is released, and the cases of Hammond v. Crawford, 9th Bush, and Greenwell v. The Commonwealth, 78th Ky., relied on as authority to sustain the defense, neither one of the cases control the question involved in this case.

In Hammond v. Crawford, the action was brought in the name of the Commonwealth, as relator, for the use of Silas Hammond, and for the use of the trustees of the several school districts in the county, against Crawford, former school commissioner for the county of Powell, and his

Taylor v. Hemingray, &c.

sureties, for failing to pay over certain moneys he drew from the treasury as the common school fund due the county.    There was a demurrer to the petition by the sureties, and sustained on the ground that the petition failed to show he had authority of law to withdraw the money.

In the case of Greenwell v. The Commonwealth, the sureties on a sheriff's bond were attempted to be made liable for a tax that it was alleged the sheriff had collected, but that had never been imposed by the county court.    This court held if the court imposed no taxation, the sheriff had no right to collect.    It was a local railroad tax, and the county court authorized to make the levy.    These cases, on their merits, are exactly the reverse of the case before us. In neither was there any authority for the principal to collect, or appropriate the proceeds when collected; but here the petition was filed by the guardian, asking a sale of his ward's real estate, and an investment of the proceeds.    He executes a bond that, as special commissioner, he will invest the proceeds as directed by the court, with appellant as his surety.    The original judgment, under which the bond was given, appointed the guardian a special commissioner to receive the purchase money from the master when collected, and reinvest the same, &c.    This was the order appointing, but did not authorize him to invest or collect the money; but a subsequent order permitted the purchasers to pay the money before due, and the guardian, as special commissioner, *was ordered to invest it, and make report*.    He did receive the money, as he admits; but it is maintained that the record does not show that he received it from the commissioner.    The surety undertook that he would invest it, and the failure to do so was the breach:

He was entitled to the money for that purpose, and gave his bond that he would invest the proceeds. He was then ordered to make the investment, and admits that he received the money for that purpose. It is therefore an immaterial inquiry, the order to invest having been made, whether he obtained the money from the one or the other. The money was, in fact, in court, and if the order had directed the guardian to withdraw it and invest, it could not have been more certain and positive than the order made.

The surety was in court asking a settlement of the guardian's accounts, and insisting that all the moneys that were paid him were received by him as guardian and not as special commissioner, and that as guardian Timberlake should be held to account and he, as surety, released. Then appellees, in their cross-action, seek to recover on both bonds; but it is evidently an action on the bond as special commissioner. The court ascertained, through its commissioner, the amount due by reason of the collection of the purchase-money, and required, by an interlocutory order, the guardian to pay the money on or before the next term of the court, and if not, that a judgment or steps would be taken to hold the surety responsible. The money was not paid, and a judgment rendered requiring the surety and his principal to pay the money over to Hemingray, who had married the ward, and was made commissioner to receive the money.

We see no reason why such a judgment was not proper. The judgment could have been rendered in favor of the infants in no other mode, as the chancellor wanted to reinvest it.

Their cross-petition authorized such a judgment, and the same is therefore affirmed.